[Cite as *State v. Wilson*, 2014-Ohio-41.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 13CA39 |
| JULIAN WILSON, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Richland County
                             Court of Common Pleas, Case No. 2012
                             CR 0761

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      January 8, 2014

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JAMES J. MAYER, JR.                       WILLIAM BRINGMAN
PROSECUTING ATTORNEY                      13 East College Street
JILL COCHRAN                              Fredericktown, OH 43019-3015
ASSISTANT PROSECUTING ATTORNEY
38 South Park Street
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Defendant-appellant Julian Joseph Wilson, Jr. appeals his conviction entered by the Richland County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} Karen Brown ("Brown") and appellant Julian Wilson, Jr. began dating in June of 2012. The two dated until October of 2012, breaking up for a brief period between July and August. Throughout their relationship, Brown and appellant maintained separate residences. Brown testified that on October 15, 2012, she and appellant were dating and getting along well. However, on that date, while appellant was at Brown's home in Mansfield, Ohio, he went through her cell phone and found a message from another man. Brown testified the message was an old message from a friend. Appellant testified it was a recent and explicit text message from another man. Brown and appellant started arguing. Brown stated appellant punched her in the hand, causing her to drop the cell phone, took her cell phone, and left the residence. Brown subsequently went to her friend's house and called appellant to inform him she needed him to return her phone. Brown testified appellant told her if she wanted the phone back, she would have to return to her residence.

{¶3} Brown stated when she and her friend arrived at her home appellant met her at her friend's vehicle and lifted his shirt to display a kitchen steak knife with a wooden handle tucked between his waistband and stomach. Brown's friend did not see the knife because Brown's body blocked her view of appellant and Brown told her friend

to return home.  Brown testified appellant whispered to Brown that he would kill her right then and there if she yelled and told Brown to get into the house.

{¶4}    According to Brown, when she and appellant walked inside her home, appellant shut and locked the door.  After Brown and appellant started arguing, appellant removed the knife from his waistband and used the knife to stab between her legs at the pillow she was sitting on.  The pillow was not damaged.  Brown stated appellant would not allow her to leave and when she requested to use the bathroom as a ploy to escape through the bathroom window, appellant told her he would follow her to the bathroom.  Brown testified appellant told her the only way she was leaving the home was in a body bag.  When Brown's sister called her, Brown stated appellant told her sister he killed Brown.  Brown testified the incident lasted approximately one hour, during which time appellant would not let her leave her home.  At one point, appellant dropped or set the knife down and Brown was able to pick up the knife and hide it between her legs.  However, Brown stated that appellant then punched her in the face to make her return the knife.

{¶5}    Brown testified when her fifteen year old son, T.L., entered the home, she escaped out the back door.  Brown did not leave the scene or run to the neighbor's house, but yelled for T.L. to leave the house and told him appellant had a knife.  On cross-examination, Brown testified appellant previously punched her on the day of her father's funeral and one other time.

{¶6}    T.L. testified when he got to Brown's house, the door was locked.  T.L. could hear people inside, but it took them a long time to answer the door and he felt something was not right about the entire situation.  After two or three knocks, appellant

answered the door and let T.L. inside the home. T.L. saw Brown crying and Brown told T.L. appellant hit her. T.L. testified appellant admitted to striking Brown. T.L. and appellant began fighting and appellant punched T.L. and pushed him out of the house through the screen door. T.L. stated he did not see the knife until he and appellant got outside and when appellant pulled the knife out of his pocket, T.L. attempted to pin the knife hand against the wall. Brown stated she feared appellant was attempting to stab her son and thus she wrapped her arms around T.L., pulling him back. When appellant attempted to stab T.L., appellant stabbed Brown in the back of the hand. Appellant left the scene and Brown received medical attention after a neighbor called the police. Brown went to the hospital and was treated with several stitches in her hand.

{¶7} Office Corey Kaufman ("Kaufman") was sent to the scene on report of a stabbing. He was unable to locate appellant after the incident, but went to the hospital to take pictures of Brown's wounds. Kaufman testified Brown was scared and nervous after the incident.

{¶8} Dr. Crouse ("Crouse"), an emergency room doctor at MedCentral in Mansfield, treated Brown at the hospital. Brown informed Crouse she had been punched in the face and stabbed in the hand. Crouse examined Brown and confirmed her injuries were consistent with Brown's allegations. Brown had bruising on the left side of her face and this contusion was most likely from being struck by someone's right hand. The injury to Brown's hand was consistent with being stabbed with a knife. Crouse opined the knife that made the wound would have been capable of inflicting death.

{¶9} Appellant testified on his own behalf. Appellant stated he and Brown never had any physical altercations, but did previously have verbal altercations. Appellant testified on October 15, 2012, he was looking through Brown's cell phone while at her house. When he encountered an explicit text message on the phone between Brown and another man, appellant confronted Brown and she "went crazy," stormed out of the house and left him with her cell phone. After Brown called appellant to request her phone back, appellant stated he told her she had to come back and retrieve it from him at her home. Appellant testified Brown returned home with a friend and he met her at the car. Brown and appellant went into the home and appellant stated he did not lock the door when they entered the home. Appellant estimates he and Brown fought for approximately ten to fifteen minutes after going into the home. Appellant testified he never hit Brown and never had a knife.

{¶10} According to appellant, T.L. knocked on the door and came into the house because the door was unlocked. Appellant denied hitting Brown, but Brown told T.L. that appellant hit her. Appellant stated after T.L. and appellant began fighting, T.L. backed him up against the screen door and pulled out a folding knife that was brown and gold and T.L. accidentally stabbed Brown in the hand as she reached around T.L. Appellant testified he did not restrain Brown from leaving the home, did not threaten her with a knife, and did not have a knife with him at any point on the day of October 15, 2012. Appellant left the scene but did see the police and ambulance arrive from down the street. Appellant initially testified he went home after the incident, but later testified he did not go home for three days after the incident. On cross-examination, appellant opined that Brown made up the assault because she knew appellant intended to reunite

with his ex-girlfriend. Appellant denied any knowledge of how Brown received her facial injury. Appellant testified regarding his criminal record, including several prior felonies for theft offenses and admitted a prior conviction for aggravated assault, but denied physically harming anyone.

{¶11} Brown testified during rebuttal and stated that T.L. did not stab her accidentally. Further, that she did not know at the time of the incident that appellant was getting back together with an ex-girlfriend or that he had gotten back with her at the time of trial.

{¶12} On November 13, 2012, appellant was indicted with one count of kidnapping under R.C. 2905.01(A)(3), a felony of the first degree, one count of felonious assault in violation of R.C. 2903.11(A)(1) for causing or attempting to cause serious physical harm, a felony of the second degree, one of count of felonious assault under R.C. 2903.11(A)(2) for causing or attempting to cause physical harm with a deadly weapon, a felony of the second degree, and one count of assault under R.C. 2903.13(A).

{¶13} Appellant filed a Request for Intention to Use Evidence and Demand for Discovery on November 28, 2012. Also on November 28, 2012, appellant filed a request for bill of particulars pursuant to Criminal Rule 7(E). Appellee filed its Criminal Rule 16 discovery compliance on November 28, 2012, listing Corey Kaufman, Karen Brown, T.L., and Dorothy Latimore as witnesses for trial. Appellee supplemented discovery on March 4, 2013, and March 21, 2013. The trial was continued from the original trial date of February 25, 2013 to March 25, 2013. Counsel for appellant filed a motion to continue the trial due to a pending custody trial set for the same day. The trial

court denied the motion, stating that criminal cases assigned for trial have priority over custody cases.

{¶14} On March 25, 2013, the day of trial, appellant filed a motion to quash or dismiss indictment for failure of appellee to provide a bill of particulars as requested on November 28, 2012. Appellee filed a bill of particulars on March 25, 2013, providing the conduct that constituted the crime was as follows: "On October 15, 2012 at 75 Sturges Avenue, Mansfield, Ohio, the defendant wielded a knife at Karen Brown, refusing to let her leave for approximately an hour. He poked at her with the knife and stabbed her in the hand as he was attempting and threatening to stab [T.L.]. Karen Brown required stitches. The knife he used is capable of inflicting death." The same facts were included in each of the four counts in the bill of particulars.

{¶15} Prior to the beginning of the trial, the trial court heard arguments on appellant's motion to quash or dismiss indictment. Appellant argued he was prejudiced because he only received the bill of particulars the day of trial. Appellee argued there was no prejudice to appellant because the State gave appellant open file discovery, including police reports, witness statements, and medical records. The trial court denied the motion but informed appellant that "if as this trial develops you're in a position where you feel that you want to reargue this question because of the development of the evidence, you're not precluded from doing that." No further motions or objections were made on this matter during the trial.

{¶16} At the close of appellee's case and again at the end of trial, appellant made a Criminal Rule 29 motion for acquittal. The trial court denied appellant's motions. The trial court instructed the jury on the various counts. The trial court stated

that, "in Count II of the indictment Julian Wilson, Jr., is charged with felonious assault on Karen Brown * * * Before you can find Mr. Wilson guilty of felonious assault, which I will call serious physical harm felonious assault, you must find beyond a reasonable doubt that on or about the 15th day of October, 2012, in Richland County, Ohio, he knowingly caused serious physical harm to Karen Brown."  Regarding Count III, the trial court stated, "In Count III of the indictment Mr. Wilson is charged with felonious assault on Karen Brown by means of a deadly weapon.  * * *  Before you can find Mr. Wilson guilty of felonious assault, you must find beyond a reasonable doubt that on or about October 15, 2012, and in Richland County, Ohio, he knowingly caused or attempted to cause physical harm to Karen Brown by means of a deadly weapon."  The trial court instructed on Count IV that "before you can find Mr. Wilson guilty of assault, you must find beyond a reasonable doubt that on or about the 15th day of October, and in Richland County, Ohio, Mr. Wilson knowingly caused or attempted to cause physical harm to [T.L.]."

{¶17}  The jury returned a verdict of not guilty of Count I kidnapping, guilty of Count II felonious assault, not guilty of Count III felonious assault, and guilty of Count IV misdemeanor assault.  Appellant filed a pro se motion for judgment of acquittal on April 8, 2013.  After the state responded on April 11, 2013, the trial court denied the motion. Appellant was sentenced to four years on the Count II felonious assault and six months on the Count IV misdemeanor assault to be served concurrent with each other but consecutive to a one year sentence on a probation violation in Case No. 10-CR-622.

{¶18}  Appellant now appeals and assigns as error the following:

{¶19}  "I. THE TRIAL COURT ERRED IN NOT DISMISSING THE INDICTMENT FOR APPELLEE'S FAILURE TO PROVIDE A TIMELY BILL OF PARTICULARS.

{¶20} "II. THE TRIAL COURT ERRED IN NOT DISMISSING COUNT II AND IV FOR APPELLEE'S FAILURE TO PROVE THE STATEMENTS SET FORTH IN ITS BILL OF PARTICULARS FOR SAID COUNTS."

I.

{¶21} Appellant first argues the trial court erred in not dismissing the indictment for appellee's failure to provide a timely bill of particulars. We disagree.

{¶22} Criminal Rule 7(E) provides that, "[w]hen the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial * * * the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of the defendant alleged to constitute the offense." Further, R.C. 2941.07 states that upon the request of the accused, "the prosecuting attorney shall furnish a bill of particulars setting up specifically the nature of the offense charged and the conduct of the defendant which is alleged to constitute the offense." The purpose of the bill of particulars is to "elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985).

{¶23} However, the failure of the prosecuting attorney to provide a criminal defendant with a bill of particulars after a timely request does not automatically result in a reversal of a conviction. *State v. Cossack*, 7th Dist. No. 03MA110, 2005-Ohio-2784. The failure to provide a bill of particulars upon request is harmless error unless a defendant demonstrates that his "lack of knowledge concerning the specific facts a bill of particulars would have provided him actually prejudiced him in his ability to fairly

defend himself." *State v. Chinn*, 85 Ohio St.3d 548, 1999-Ohio-288, 709 N.E.2d 1166 (1999).

{¶24} In this case, the failure of appellee to provide a bill of particulars until the day of trial did not preclude or hinder appellant from effectively presenting his defense. Appellant provided no specific reason why he was prejudiced by the filing of the bill of particulars on the date of trial. As indicated by appellee during the hearing on appellant's motion to dismiss, appellee had an "open discovery" policy through which appellant and his counsel were provided with copies of the police reports, medical records, and witness statements available to the State of Ohio. Appellant had the opportunity to assess the evidence appellee planned to present during trial and appellant had the opportunity during his testimony to assert that T.L. accidentally stabbed Brown during the October 15, 2012 incident. Appellant thus prepared his defense without a bill of particulars, did not complain of its absence until the day of trial, and does not indicate how he could have defended himself differently had he been provided with the bill of particulars prior to the date of trial.

{¶25} Appellant requested the bill of particulars on November 28, 2012. When appellee failed to comply with appellant's request, appellant took no further action until the day of trial when he filed a motion to quash or dismiss indictment. "A proper method of protesting the state's failure to provide a bill of particulars would have been to file a motion to compel compliance with the order." *State v. Shirley*, 12th Dist. No. CA2012-07-127, 2013-Ohio-1948, quoting *State v. Ray*, 12th Dist. No. CA2009-06-022, 2010-Ohio-2434. Appellant failed to file a motion to compel and likewise failed to request a continuance of the trial. Further, though the trial court denied appellant's motion to

quash or suppress, the trial court specifically informed appellant "if as this trial develops you're in a position where you feel that you want to reargue this question because of the development of the evidence, you're not precluded from doing that." No further motions or objections were made on this matter during the trial.

{¶26} Accordingly, appellant has failed to prove he was prejudiced by appellee's failure to provide a bill of particulars until the day of trial. Appellant's first assignment of error is overruled.

II.

{¶27} In his second assignment of error, appellant argues the trial court should have dismissed Counts II and IV because appellee failed to prove the statements made in the bill of particulars. Appellant contends since the same facts were included in the bill of particulars under each charge and appellant was found not guilty of kidnapping, appellee failed to prove the statements in the bill of particulars beyond a reasonable doubt. Further, that since the facts contained in all counts of the bill of particulars were the same, it was not clear as to which charge corresponded with each victim. We disagree.

{¶28} The purpose of a bill of particulars is to "particularize the conduct of the accused to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). The bill of particulars is not designed to "provide the accused with specifications of evidence or to serve as a substitute for discovery." *Id.* Thus, it must only set up the specific nature of the offense charged and the conduct of the defendant alleged to constitute the offense. Crim. R. 7(E). Further, a bill of particulars "need only be directed toward the conduct of the accused as it is understood by the

[S]tate to have occurred." *State v. Gingell*, 7 Ohio App.3d 364, 455 N.E.2d 1066 (1st Dist. 1982). Criminal Rule 33(E)(2) provides that a variance between the allegations and the evidence at trial is not reversible error unless the defense is prejudiced or misled thereby.

{¶29} In this case, the indictment provided by appellee contained the statutory language of each charge against him. The bill of particulars appellee supplied appellant with provided a specific date, location, and description of the alleged offenses sufficient to inform appellant of the conduct being alleged. The bill of particulars provided that appellant "wielded a knife at Karen Brown, refusing to let her leave for approximately an hour. He poked at her with the knife and stabbed her in the hand as he was attempting and threatening to stab [T.L.]. Karen Brown required stitches." The testimony presented at trial supports the statements provided in the bill of particulars. Brown testified appellant poked at her with a knife, stabbing the pillow she was sitting on. Brown and T.L. testified appellant stabbed Brown in the back of the hand when she tried to pull T.L. away as appellant attempted to stab T.L. Dr. Crouse stated the contusion Brown sustained was in the back of her hand, required stitches, and was consistent with a knife wound.

{¶30} Simply because the description provided in Count I of the bill of particulars was the same as in Counts II and IV of the bill of particulars does not necessitate a finding that appellee failed to meet their burden in this case. While the narrative included facts regarding counts appellant was found not guilty of, it also specifically included a description of the offenses in Counts II and IV, stating that appellant stabbed [Brown] in the hand as he was attempting and threatening to stab T.L. and that Brown

required stitches. We find appellant was on notice as to what conduct was being alleged in Counts II and IV and there is no variance between the testimony at trial and the allegations contained in the bill of particulars.

{¶31} Appellant also argues since the facts listed in the bill of particulars are the same for each count, it is not clear which count corresponds with victim Brown and which count corresponds with victim T.L. As noted above, the purpose of the bill of particulars is to "elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). The description of facts in each charge of the bill of particulars sets forth the conduct of appellant alleged to constitute each offense. Further, the trial court made it clear to the jury who was the victim in each charge in its jury instructions as the victim's name "Karen Brown" was included in Counts I, II, and III, and the victim's name "T.L" was included in Count IV.

{¶32} Appellant also argues in his second assignment of error that appellee failed to prove beyond a reasonable doubt that appellant committed the Count II felonious assault because appellant did not knowingly cause serious physical harm to Brown as he was attempting to stab T.L. We disagree.

{¶33} Sufficiency of the evidence is the standard applied "to determine whether the case may go to the jury or whether the evidence is legally sufficient as matter of law to support the jury verdict." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing the record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), superseded by constitutional amendment on other grounds.

{¶34} Appellant was convinced of felonious assault in violation of R.C. 2903.11(A)(1) which provides that: "(A) No person shall knowingly * * * (1) Cause serious physical harm to another * * *." The requisite culpable mental state for felonious assault is "knowingly," which is defined, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). It is well established that one may be presumed to intend results which are the natural, reasonable, and probable consequences of his voluntary acts. *State v. Farmer*, 156 Ohio St. 214, 102 N.E.2d 11 (1951). Further, "it is not necessary that the accused be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct." *State v. Losey*, 23 Ohio App.3d 93, 96, 491 N.E.2d 379 (10th Dist. 1985).

{¶35} In this case, Brown testified when she saw appellant take out the knife when he and T.L. were fighting outside the home, she believed appellant was going to stab T.L. in the back. Further, when she stepped in to pull T.L. away and prevent him from being stabbed, appellant stabbed her in the back of the hand. T.L. also testified appellant had the knife and stabbed Brown with the knife as she was reaching around T.L. to pull him back from appellant. Dr. Crouse confirmed Brown had an injury on the

back of her hand consistent with being stabbed. When appellant testified, he denied having a knife and stated T.L. accidentally stabbed Brown.

{¶36} Viewing the evidence in a light most favorable to appellee, we find there was sufficient evidence from which a rational trier of fact could conclude that the serious physical harm Brown sustained in the hand was a natural and logical consequence and within the scope of the risk created by appellant's voluntary conduct and was the reasonable and probable result of appellant's actions. We find the evidence provided at trial was sufficient to sustain appellant's conviction.

{¶37} Appellant next contends an acquittal of Count III, felonious assault with a deadly weapon, necessitates an acquittal on Count II, felonious assault with serious physical harm, because the verdicts are inconsistent. We disagree. The Ohio Supreme Court has held that each count of an indictment charges a complete offense and that separate counts of an indictment are not interdependent, but are each complete in itself. *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997). Further, "an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *Id.*; *State v. Brown*, 12 Ohio St.3d 147, 465 N.E.2d 889 (1984). Thus, "inconsistent verdicts on different counts of a multi-count indictment does not justify overturning a verdict * * *." *State v. Gapen*, 104 Ohio St.3d 358, 819 N.E.2d 1047, 2004-Ohio-6548 (2004). In this case, appellant alleges inconsistency between the verdicts on a multi-count indictment. As held by the Ohio Supreme Court, this is not the type of inconsistency that justifies setting aside a verdict.

**{¶38}** In the last paragraph of his reply brief, appellant argues the indictment filed in the case does not contain any allegation of subject matter jurisdiction of where the offenses occurred in violation of R.C. 2941.03(D) and requests this Court dismiss the indictment against appellant.   However, appellant did not assign as error the insufficiency of the indictment in his appellant's brief.   App. R. 16(A)(7) provides that assignments of error shall be argued in the brief of appellant.   App. R. 16(C) states that a reply brief is to "reply to the brief of the appellee."   New assignments of error cannot be raised in a reply brief.   *State v. Nichols*, 5th Dist. No. 01-CA-016, 2002-Ohio-4048, citing *Sheppard v. Mack*, 68 Ohio App.2d 95, 427 N.E.2d 522 (8th Dist. 1980). Therefore, we decline to address appellant's argument regarding the sufficiency of the indictment as it was raised for the first time in appellant's reply brief.   See *CSAHA/UHHS-Canton, Inc. v. Aultman Health Found.*, 5th Dist. No. 2010CA00303, 2012-Ohio-897.

**{¶39}** Based on the foregoing, the judgment of the Richland County Common Pleas Court is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur