[Cite as *State v. Cummings*, 2014-Ohio-3717.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100657**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEVON S. CUMMINGS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573446-A

**BEFORE:** Rocco, J., Boyle, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 28, 2014

-i-

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio   44116

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    John D. Kirkland
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Devon S. Cummings appeals from his convictions and the sentences imposed after a jury found him guilty of aggravated robbery and felonious assault, both with firearm specifications.

{¶2} Cummings presents five assignments of error. He claims that his convictions were based on essential facts not presented to the grand jury, because the evidence the state presented at trial failed to match the facts the state specified in the bill of particulars. He claims that his convictions are not supported by either sufficient evidence or the manifest weight of the evidence. He claims that his convictions constituted allied offenses that should have merged for sentencing purposes. Similarly, he further claims that the trial court erred in imposing consecutive sentences.

{¶3} This court has reviewed the record with Cummings's claims in mind, but finds no merit to any of them. Consequently, his convictions and sentences are affirmed.

{¶4} Cummings's convictions result from an incident that occurred on April 13, 2013. The state's witnesses provided the following testimony at Cummings's trial about the incident.

{¶5} The victim, sixty-nine year-old Daniel Steve Carroll, was in the business of purchasing meat wholesale then taking the meat around in his truck to sell it to his customers. One of his stops that day was to a customer who resided on East 100th Street near Quincy Avenue in Cleveland. Carroll's nieces lived a few doors away.

{¶6} Carroll arrived at the house at approximately 4:00 p.m. He set the alarm on his truck without locking the door and proceeded into the kitchen of the house. His customer was cooking something, so he waited for her to become available.

{¶7} Within a few minutes, Carroll heard the sound of his truck alarm. He quickly left the house to investigate, and, as he hurried down the driveway, he encountered a young man wearing a red vest. Carroll directed an expletive to the young man but continued to the vehicle because the driver's side door was ajar. Carroll looked inside to discover whether someone had stolen his cell phone.

{¶8} While Carroll bent to inspect the front seat, he received a blow to his head from behind. Another young man, whom Carroll later identified as Cummings, grabbed him by his collar, spun him around, and struck him again. This time Carroll received a blow in the face and fell to the ground.

{¶9} Carroll looked up to observe that Cummings wore a black jacket and held a gun in his right hand. Cummings ordered Carroll to "give it up." As this occurred, Carroll noticed that a small maroon-colored car was now parked on the street a few doors away. Carroll protested that he had nothing and Cummings dealt him another blow before reaching into Carroll's pockets. Cummings found some currency, took it, then fled.

{¶10} By this time, some of the residents in the house, including Christopher Page, had noticed the commotion and came outdoors. The young man wearing the red vest remained nearby; Carroll pointed at him and called out that he "was part of this." The

young man wearing the red vest also fled; Page, along with some companions, followed him, but Page lost sight of him near East 105th Street.

{¶11} Carroll brushed off offers to help him, noticing that the maroon car was gone. Although he was bleeding from several head wounds, he returned to his truck. Carroll drove down East 100th Street to stop very briefly at his nieces' house to inform them about the incident before he continued to the next cross street, which was Quebec Avenue.

{¶12} Carroll intended to drive home, but he heard one of the residents of his customer's house shouting at him about the young man in the red vest. While making the turn onto Quebec Avenue, Carroll saw a small maroon car coming toward him. Inside were two young men; the passenger wore a red vest.

{¶13} Carroll performed a U-turn and pursued the car. When the small car stopped at the intersection with East 93rd Street, Carroll rammed his truck into the rear of it. The passenger in the maroon car turned with a gun in his hand and fired two shots in Carroll's direction, but succeeded only in shattering the maroon car's rear window. The driver then continued his flight on East 93rd Street.

{¶14} Carroll remained undeterred by the gunshot. As he followed the car, he called the police to report his actions and his location. The police dispatcher convinced Carroll to cease the chase, however. Carroll then stopped his truck at the intersection of East 93rd and Mt. Auburn Avenue.

{¶15} The police arrived at Carroll's location at nearly the same time as did "a couple carloads" of Carroll's friends and relatives who lived nearby. Carroll by this time required medical attention. Patrolman John Ball and his partner ensured that Carroll received treatment by paramedics, heard discussions among Carroll's relatives concerning the identity of the maroon car's driver, and then began "working on the report" of the incident.

{¶16} Thus, after checking on Carroll's condition at the hospital, the officers went to Cummings's grandparents' house. The officers learned Cummings's location, proceeded there, and Cummings came out to meet them. Cummings indicated he knew nothing about a robbery; he claimed he only stopped to pick up a friend who was being chased by a van. Upon observing that Cummings's small maroon car had been "backed in on the vacant property" next door and that the "back window was broken out," the police arrested Cummings.

{¶17} Cummings was indicted in this case on one count of aggravated robbery and one count of felonious assault. Each count carried a one-year and a three-year firearm specification. Cummings elected to take his case to a jury trial.

{¶18} After considering the evidence presented by the state in addition to the testimony of Cummings's grandparents, the jury found Cummings guilty on both counts with their firearm specifications. The trial court determined that neither the predicate offenses nor their respective firearm specifications were allied pursuant to R.C. 2941.25, and sentenced Cummings to a prison term that totaled eleven years.

{¶19} Cummings appeals from his convictions and the sentences imposed with the following five assignments of error.

I. Appellant's constitutional rights were violated where his conviction for felonious assault and related firearm specifications were [sic] based on essential facts not presented to the Grand Jury and were [sic] contrary to the facts specified in the state's Bill of Particulars.

II. The trial court erred by failing to merge all allied offenses of similar import and by imposing separate sentences for allied offenses which violated Appellant's state and federal rights to due process and protections against double jeopardy.

III. Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motions for acquittal.

IV. The convictions were against the manifest weight of the evidence.

V. The trial court erred by imposing consecutive sentences that are contrary to law and not supported by the record.

{¶20} Cummings's first, second, and fifth assignments of error present interrelated issues. They will be addressed together.

{¶21} Cummings first argues that his convictions for two separate offenses must be reversed because they were based on "essential facts not presented to the Grand Jury." He asserts that, because the bill of particulars filed in this case specified that the offenses both took place "at the location of East 100th and Quebec, Cleveland, Ohio, 44014," the state was prohibited from presenting evidence at trial to prove that the offenses occurred separately, i.e., that Cummings committed the aggravated robbery at East 100th and Quebec, and that thereafter he was the accomplice of another person who committed a

felonious assault at East 93rd Street and Quebec. As authority for his argument, Cummings cites *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist.1994).

**{¶22}** In *Vitale*, the defendant was indicted on one count of theft that was alleged to have occurred on June 14, 1991. The state's bill of particulars also stated that the offense occurred "on or about June 14, 1991, at approximately 12:00 p.m., at the location of 1869 East 79th Street in the City of Cleveland." At trial, however, the state's proof indicated that, on June 14, 1991, the defendant had promised to give the repairman a check for the work that had been performed on the defendant's car, but changed his mind and on June 21, 1991, told the repairman that he would not pay because the work was unsatisfactory. The trial court permitted the state to amend the indictment to allege that the theft had occurred "from June 14, 1991 through June 21, 1991 inclusive," but this court declared the change improper. In relevant part, this court noted:

> [T]he trial court herein acquitted the defendant of any offense occurring on or about the June 14th date: ("But I find there was no theft on that day * * * "). Instead, the trial court convicted the defendant of theft which it found occurred on June 21, 1991 at the alleged victim's house, not his place of business. The risk then is squarely presented that defendant was convicted of an offense on evidence that was never presented to the grand jury. In applying the similar protection of the Fifth Amendment, this potential must be considered critical, as in *United States v. Ford* (C.A.6, 1989), 872 F.2d 1231, 1236:
>
> > "*Absent language indicating the grand jury's intent to permit a conviction based on more than one incident of criminal conduct*, a court cannot assume that a grand jury would have included in its indictment an additional incident of criminal conduct. *See [Ex parte] Bain*, [(1887)], 121 U.S. [1] at 10, 7 S.Ct. [781] at 786 [30 L.Ed. 849 at 852]. It is therefore possible that the jury convicted Ford based on *an incident of possession* not intended by the grand jury to be

part of the charge. This frustrates the fifth amendment grand jury indictment guarantee."

(Emphasis added.)

{¶23} The instant case presents entirely different facts. Cummings was charged with two "incidents of criminal conduct" that occurred near in time and place, and two people were alleged to have been involved in committing the different offenses. In spite of the fact that Cummings took part in six pretrial hearings and that the state supplied discovery and supplemented its discovery, Cummings neither requested during the discovery phase a more specific statement of the offenses from the state, nor raised any objections to the trial court's jury instructions, which included instructions on complicity and conspiracy. Thus, this case is more akin to the facts discussed by the Ohio Supreme Court in *State v. Sellards*, 17 Ohio St.3d 169, 478 N.E.2d 781 (1985), in which the court observed in relevant part as follows:

> * * * A certain degree of inexactitude of averments [in an indictment], where they relate to matters other than elements of the offense, is not *per se* impermissible or necessarily fatal to a prosecution.

> An accused is not foreclosed from securing specificity of detail, however, * * * [a] bill of particulars has a limited purpose – to elucidate or particularize the conduct of the accused alleged to constitute the charged offense. *See, e.g., State v. Halleck* (1970), 24 Ohio App.2d 74 [53 O.O.2d 195]; *State v. Dinsio* (1964), 4 Ohio App.2d 309 [33 O.O.2d 353]. A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery. *State v. Wilson* (1972), 29 Ohio St.2d 2-3 [58 O.O.2d 409]. Thus, "* * * [o]rdinarily, specifications as to date and time would not be required in a bill of particulars since such information does not describe particular *conduct*, but [instead describes] only *when* that conduct is alleged to have occurred, knowledge of which * * * is generally irrelevant to the preparation of a defense." (Emphasis sic.) *State v. Gingell* (1982), 7 Ohio App.3d 364, 367.

*  *  *

*  *  * [W]here the inability to produce a specific time or date when the criminal conduct occurred is, as would be the more typical case, <u>without material detriment to the preparation of a defense</u>, the omission is without prejudice, and without constitutional consequence.

(Emphasis in original, underscoring added.)

{¶24} Similarly, the record of this case demonstrates that knowledge of *where* each instance of the criminal conduct was alleged to have occurred largely was irrelevant. The entire episode occurred within a relatively small period of time and within a small area of Cleveland. Cummings denied taking part in the aggravated robbery, but admitted to the police officers that he drove the maroon car, and admitted that Carroll's van chased and then struck his car. Thus, he knew of the location of the second incident. Cummings denied that his passenger fired any gunshots; instead, he claimed his car's rear window shattered as a result of the collision. As the court stated in *State v. Cooper*, 139 Ohio App.3d 149 at 162, 743 N.E.2d 427 (12th Dist.2000):

> The record shows that appellant had sufficient information regarding each instance of conduct to mount a vigorous defense against the felonious assault charges. Nothing more than that is contemplated by the statutes and criminal rules providing for a bill of particulars.

> {¶25} Cummings prepared his defense without questioning the state's theory of the case, did not complain of the state's theory of the case until the sentencing hearing, and does not indicate how he could have defended himself differently had he been informed more specifically of the state's theory of the case previous to that point. *State v. Wilson*,

5th Dist. Richland No. 13CA39, 2014-Ohio-41, ¶ 23-24. Consequently, the state's failure in this case to specify in its bill of particulars that the felonious assault occurred in a slightly different location from the address where the aggravated robbery occurred did not constitute reversible error. Cummings's first assignment of error is accordingly overruled.

{¶26} Based on his premise that only one incident occurred and that it occurred only in the driveway at E. 100th Street, Cummings argues in his second assignment of error that his convictions were allied offenses pursuant to R.C. 2941.25(A). Because his premise is faulty, his argument fails.

{¶27} R.C. 2941.25 prohibits the imposition of multiple punishments for the same criminal conduct. An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶28} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court clarified the test used to determine whether offenses are allied offenses of similar import under R.C. 2941.25. Under this test, courts must first determine "whether it is possible to commit one offense and commit the other with the same conduct." *Johnson* at ¶ 48. If it is possible to commit both offenses with the same conduct, courts must next determine whether the offenses were, in fact, committed by the same conduct. If the offenses are committed either separately or with a separate animus, the offenses will not merge. *Id.* at ¶ 51.

{¶29} In this case, Cummings committed the offense of aggravated robbery in the driveway of the house on E. 100th Street by striking Carroll and threatening him with a gun before taking his money and then fleeing. A few minutes later, after Carroll caught up to Cummings's car, Cummings's passenger turned in his seat, pointed a gun at Carroll, and fired the weapon. The two shots Cummings's accomplice fired at Carroll burst through Cummings's rear window.

{¶30} The trial court correctly concluded from the facts presented in this case that the offenses were committed separately and with a separate animus. *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 23-25; *State v. Orr*, 8th Dist. Cuyahoga No. 96377, 2011-Ohio-6269, ¶ 38. Cummings's second assignment of error is overruled.

{¶31} Again, based upon his premise that only one incident occurred and that it occurred only in the driveway at E. 100th Street, Cummings argues in his fifth assignment of error that the trial court improperly imposed consecutive prison terms upon him for his convictions. Again, because his premise is faulty, his argument fails.

{¶32} The standard of review set forth in R.C. 2953.08(G)(2) governs all felony sentences. *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 7. Thus, this court reviews Cummings's consecutive sentences to determine whether the imposition of those sentences is clearly and convincingly contrary to law. *Id.*

{¶33} The record of the sentencing hearing in this case demonstrates that the trial court engaged in the required analysis before imposing consecutive sentences. *Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 32-36. Furthermore, the trial court

made findings that comport with the statutory requirements. *Id.* Cummings's fifth assignment of error is also overruled.

**{¶34}** Cummings argues in his third and fourth assignments of error that his convictions are supported by neither sufficient evidence nor the manifest weight of the evidence. However, this court disagrees.

**{¶35}** When reviewing a claim that there is insufficient evidence to support a conviction, this court views the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. If there is sufficient evidence to support the conviction as a matter of law, this court next considers the claim that the judgment was against the manifest weight of the evidence.

**{¶36}** In ruling on a challenge to the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* This is because the weight of the evidence and the credibility of

witnesses are matters primarily for the jury to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶37} R.C. 2911.01 states:

No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;

(3) Inflict, or attempt to inflict, serious physical harm on another.

{¶38} Felonious assault is defined in R.C. 2903.11(A)(2) as follows:

(A) No person shall knowingly * * * :

* * *

(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.

{¶39} Ohio's complicity statute, R.C. 2923.03(A), provides:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * aid or abet another in committing the offense.

**{¶40}** In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. *State v. Sims*, 10 Ohio App.3d 56, 460 N.E.2d 672 (8th Dist.1983). A person aids or abets another when he

> "supports, assists, encourages, cooperates with, advises, or incites" the principal in the commission of the crime and shares the criminal intent of the principal. Such intent may be, inferred from the circumstances surrounding the crime.

*State v. Langford*, 8th Dist. Cuyahoga No. 83301, 2004-Ohio-3733.

**{¶41}** In *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478, ¶ 19, this court held that in order to "have" a firearm or dangerous ordnance, an individual must either actually or constructively possess it. *Id.*, citing *State v. Hardy*, 60 Ohio App.2d 325, 327, 397 N.E.2d 773 (8th Dist.1978). This court stated:

> Actual possession requires ownership and, or, physical control; constructive possession may be achieved by means of an agent. * * *

> As we explained, the evidence was sufficient to prove beyond a reasonable doubt that Adams aided and abetted Rankin, the one who actually possessed and brandished the gun. Accordingly, through Rankin, Adams constructively possessed a firearm within the meaning of R.C. 2923.13(A)(3). *See State v. Lewis*, 8th Dist. Cuyahoga No. 81957, 2003-Ohio-3673 (evidence sufficient to prove having a weapon while under disability when only codefendant pointed the gun at victims during robbery); *State v. Reed*, 8th Dist. [Cuyahoga] No. 93346, 2010-Ohio-1866 (conviction for having a weapon while

under disability upheld despite defendant not being the shooter, but being an active participant in the crimes).

*Adams* at ¶ 16, 19.

**{¶42}** The record of this case demonstrates that Cummings's convictions are supported by both sufficient evidence and the manifest weight of the evidence. Carroll stated that he looked right into Cummings's face when Cummings's blows to his head caused him to fall to the ground. Carroll stated that the man who struck him reached into his pockets and took his cash. Carroll also stated that he recognized Cummings as "the guy that had hit [him] actual" when Carroll walked into the courtroom to testify and saw Cummings.

**{¶43}** One of the state's witnesses testified that the man driving the maroon car in the vicinity of the robbery just after the robbery took place picked up the man wearing the red vest. Carroll testified that he spotted the two of them, Cummings attempted to get away, but Carroll gave chase. Carroll also stated that when he got close enough to Cummings's car to ram it, Cummings's passenger turned and fired gunshots at Carroll before Cummings and his cohort escaped. Cummings admitted to the police that the maroon car with the shattered back window was his, he had been driving it when Carroll's van struck it, and that he had driven away with his passenger after the collision.

**{¶44}** This evidence was thus sufficient to support each of Cummings's convictions. *State v. Allmond*, 8th Dist. Cuyahoga No. 89020, 2007-Ohio-6191; *State v. Jordan*, 8th Dist. Cuyahoga No. 94168, 2010-Ohio-5131. Moreover, because the other witnesses provided testimony that corroborated Carroll's version of the events, this court

cannot conclude that the jury "lost its way" in finding Cummings guilty of aggravated robbery and felonious assault with firearm specifications. *Id.*

**{¶45}** Accordingly, Cummings's third and fourth assignments of error also are overruled.

**{¶46}** Cummings's convictions and sentences are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MARY J. BOYLE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR