[Cite as *State v. Johnson*, 2014-Ohio-494.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99822**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ERIC JOHNSON

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-567736-A

**BEFORE:** Blackmon, J., Boyle, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 13, 2014

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Nicole M. Ellis
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellant Eric Johnson appeals his convictions for aggravated robbery, kidnapping, attempted murder, and related gun specifications. Johnson assigns the following errors for our review:

> I. The trial court erred in convicting and consecutively sentencing allied crimes of similar import which resulted in cumulative punishments violating the double jeopardy clause of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 10, Article I of the Ohio Constitution.
>
> II. The trial court abused its discretion by imposing consecutive sentences contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines.
>
> III. Appellant was denied the effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution; and Article 1, Section 10, Ohio Constitution.
>
> IV. Appellant's convictions are against the manifest weight of the evidence.
>
> V. Prosecutorial misconduct deprived appellant of his constitutionally guaranteed right to a fair trial, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> VI. The appellant was denied his right to due process when the court failed to hold a proper *Remmer* hearing to determine potential juror bias.

**{¶2}** Having reviewed the record and pertinent law, we affirm Johnson's convictions and sentence. The apposite facts follow.

**{¶3}** On October 22, 2012, the Cuyahoga County Grand Jury indicted Johnson on one count of kidnapping, two counts of aggravated robbery, two counts of felonious

assault, and a single count of attempted murder. The aforementioned counts had one and three-year firearm specifications attached. The grand jury also indicted Johnson on one count of petty theft.

{¶4} On November 5, 2012, Johnson pleaded not guilty at his arraignment and several pretrials were later conducted. Ultimately, on January 23, 2013, Johnson filed a motion to suppress eyewitness identification. The trial court denied the motion, and on February 14, 2013, a jury trial commenced.

## Jury Trial

{¶5} At trial, through the testimony of six witnesses, the evidence established that in the early hours of August 26, 2012, James Keith was robbed and shot multiple times. As he laid in the middle of the street, a passing motorist stopped and summoned EMS, who arrived to find Keith's bloody body. The EMS transported Keith to MetroHealth Hospital where he remained for more than a month.

{¶6} Detective David Harris of the Cleveland Police Department Fourth District testified that he and his partner, Detective Brian Todd, immediately responded to the scene, where they found Keith screaming that he had been shot. Detective Harris testified that they were unable to ascertain who had shot Keith, because he just kept repeating hysterically that he had been shot and then passed out.

{¶7} Detective James Brooks, also of the Cleveland Police Department's Fourth District, testified that he went to see Keith at the hospital almost a month later. Detective Brooks testified that Keith indicated that "E" shot him and that "Junior" was with "E."

Detective Brooks testified that Keith indicated that "E" and "Junior" were from the Garden Valley Estates. Further investigation revealed that "E" was Johnson's nickname and "Junior" was codefendant John Alexander's nickname.

{¶8} Detective Brooks, using a procedure known as blind administration, created photo arrays that Detective James Bellanca later administered to Keith. Detective Brooks stated that blind administration is used to remove any signs of bias when the photo lineup is presented to the victim or witness. Detective Bellanca did not know which of the photographs in the array, if any, depicted Johnson or his codefendant and that he was not present when Detective Bellanca administered the photo arrays.

{¶9} After being shown the photo arrays, Detective Brooks said that Keith identified the photo of Johnson as his assailant, circled Johnson's photo, signed his name, and indicated that he was certain that Johnson was the man who robbed and shot him multiple times. Keith also identified Alexander as Johnson's codefendant. In addition, Keith made an in-court identification of Johnson.

{¶10} Keith testified that he had gone to the Garden Valley Estates to borrow money from his friend, Mya. After picking up the money, he started to walk home through a field near East 93rd Street and Union Avenue, when he saw Johnson and Alexander sitting in a black Volkswagen Jetta. Keith stated that he knew Johnson, but only knew his nickname "E" and knew Alexander since he was 14 years old, but only by his nickname "Junior."

{¶11} Keith testified that shortly after he had passed the Volkswagen Jetta, he felt a gun in the back of his head, turned around, and looked in Johnson's eyes. Johnson proceeded to hit him in the head with the gun and said: "Don't you know this is a robbery?" Keith looked again and saw Alexander standing a couple feet away.

{¶12} Keith said that Johnson kept asking if Keith knew where he was, which is gang parlance indicating that Keith was in the wrong territory. Johnson then ordered Keith to empty his pocket and he complied, giving up $40 and two cell phones.

{¶13} After Keith gave up his property, Johnson ordered him to run, but then began shooting. A bullet struck Keith's leg, he lost balance and fell near a pole. Johnson then shot him multiple times in his stomach from close range and he was looking at Johnson the entire time. Johnson and Alexander then fled in the Volkswagen Jetta.

{¶14} Keith laid on the ground thinking he was going to die, but decided to crawl into the middle of the street. He said a motorist eventually pulled alongside him and called for an ambulance. Keith later passed out and when he woke up in the hospital, the staff told him he had been in a coma.

{¶15} The jury found Johnson guilty of all counts. The trial court found the kidnapping and aggravated robbery charges merged for sentencing purposes. The trial court also found that the felonious assault and attempted murder charges merged for sentencing purposes. The state elected that Johnson be sentenced on aggravated robbery and attempted murder.

**{¶16}** The trial court then sentenced Johnson to three years for the firearm specification that was to be served prior to and consecutive to the underlying charges. The trial court then imposed prison terms of nine years each for the two underlying charges. Finally, the trial court ordered that the sentences be served consecutively for a total prison term of 21 years.

### Allied Offenses

**{¶17}** In the first assigned error, Johnson argues the trial court erred by imposing separate sentences for his convictions for aggravated robbery and attempted murder. Johnson contends these were allied offenses of similar import.

**{¶18}** Our review of an allied offenses question is de novo. *State v. Webb*, 8th Dist. Cuyahoga No. 98628, 2013-Ohio-699, ¶ 4, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

**{¶19}** R.C. 2941.25 is the codification of the judicial doctrine of merger and provides guidance as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25; *State v. Patterson*, 8th Dist. Cuyahoga No. 98127, 2012-Ohio-5511, ¶ 33.

**{¶20}** In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25. In doing so, it expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, and held that rather than compare the elements of the crimes in the abstract, courts must consider the conduct of the accused:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct * * *. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."

> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

> Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

(Citations omitted.) *Id*. at ¶ 48-51; *State v. Burt*, 8th Dist. Cuyahoga No. 99097, 2013-Ohio-3525, ¶ 30.

**{¶21}** In the instant case, the aggravated robbery and the attempted murder were not committed with the same conduct or animus. The testimony at trial established that Johnson stuck a gun to the back of Keith's head and demanded the victim's money. Keith complied, Johnson took the money, and ordered him to run. At that juncture, the

aggravated robbery was completed. Keith could have fled to safety and Johnson could have departed with his ill-gotten gains.

{¶22} However, when Keith started to flee as instructed, Johnson began shooting, hitting him in the leg. As Keith stumbled to the ground, Johnson approached and fired five more shots into Keith's stomach. At that juncture, a second offense with a separate animus was completed.

{¶23} Recently, we encountered a substantially similar fact pattern in *State v. Ranzy*, 8th Dist. Cuyahoga No. 97275, 2012-Ohio-2763. In *Ranzy*, defendants attempted to rob a victim at gun point. The victim attempted to flee, but was wrestled to the ground. The victim managed to extricate himself and began running in a zig zag fashion down the street. As the victim fled, defendant fired multiple gunshots, striking the victim in shoulder.

{¶24} In *Ranzy*, addressing the same issue Johnson now raises, we specifically stated:

> These offenses were not committed with the same conduct or animus. Once Randle opted to try to escape or flee from the robbery, the defendant and Vanderhorst decided to escalate the matter and try to kill him. True, defendant failed to successfully rob Randle, but that failed attempt does not create an allied offense situation where the offender can shoot at the victim attempting to murder him based on the logic that the robbery was "ongoing." This is not a case where the gun was fired accidentally; there were clear purposeful efforts to kill Randle by shooting him in the head and then proceeding to chase after him while still firing the weapon.

*Id*., citing *State v. Orr*, 8th Dist. Cuyahoga No. 96377, 2011-Ohio-6269, ¶ 38.

**{¶25}** Like *Ranzy*, the two convictions herein are not allied offenses of similar import. Consequently, the trial court did not err when it imposed separate sentences for the aggravated robbery and attempted murder convictions. Accordingly, we overrule the first assigned error.

## Consecutive Sentences

**{¶26}** In the second assigned error, Johnson argues the trial court abused its discretion by imposing consecutive sentences without making the appropriate findings.

**{¶27}** We review consecutive sentences using the standard of review set forth in R.C. 2953.08. *State v. Wells*, 8th Dist. Cuyahoga Nos. 99305, 99306, and 99307, 2013-Ohio-3809, citing *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 10 (holding that the standard of review set forth by the Ohio Supreme Court in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, is no longer valid in light of the enactment of H.B. 86 and the "revival" of statutory findings necessary for imposing consecutive sentences).

**{¶28}** R.C. 2953.08(G)(2) provides two grounds for an appellate court to overturn the imposition of consecutive sentences: (1) the sentence is "otherwise contrary to law"; or (2) the appellate court, upon its review, clearly and convincingly finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4). *Id.*, citing *Venes* at ¶ 11; R.C. 2953.08(G)(2).

**{¶29}** The presumption in Ohio is that sentencing is to run concurrent, unless the trial court makes the required findings for consecutive sentences set forth in R.C.

2929.14(C)(4). *State v. Wells*, 8th Dist. Cuyahoga No. 98428, 2013-Ohio-1179, ¶ 11; R.C. 2929.41(A).

**{¶30}** Under current R.C. 2929.14(C)(4), when imposing consecutive sentences, the trial court must first find the sentence is "necessary to protect the public from future crime or to punish the offender." Next, the trial court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the trial court must find that one of the following factors applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under postrelease control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C).

**{¶31}** Compliance with this statute "requires separate and distinct findings in addition to any findings relating to purposes and goals of criminal sentencing." *Venes*, 2013-Ohio-1891, 992 N.E.2d 453, at ¶ 17, citing *State v. Jones*, 93 Ohio St.3d 391, 399, 2001-Ohio-1341, 754 N.E.2d 1252. The failure to make these findings is "contrary to law." *Id.* at ¶ 12.

{¶32} In the instant case, a review of the record reveals that the trial court strictly complied with the requirements of R.C. 2929.14(C)(4). At the sentencing hearing, after the trial court had heard from the prosecuting attorney, defense counsel, and Johnson, he explained the purposes and principles of felony sentencing. The trial court discussed the seriousness of Johnson's crimes, the physical harm to the victim, as well as Johnson's criminal history. The trial court also pointed out that Johnson had not responded well to sanctions in the past and had even engaged in drug trafficking soon after he was released on bond for the instant case.

{¶33} In relevant part, the trial court stated:

* * * I'm going to impose these sentences consecutive because the sentence is necessary to protect the public from future crimes by you and that the consecutive sentence is necessary to punish you for this kind of conduct.

Further, I don't believe these sentences are disproportionate to the seriousness of this conduct, shooting someone, I think seven to ten times, while he's laying on the street. * * *. Further, I don't believe these sentences are disproportionate in the danger you pose to the public. Tr. 746-747.

{¶34} Here, a review of the above excerpt reveals that the trial court found that a consecutive sentence was necessary to adequately punish Johnson and protect the public. The trial court also found that consecutive sentences were not disproportionate to the seriousness of Johnson's conduct and to the danger he poses to the public as required by R.C. 2929.14(C)(4).

{¶35} Finally, the trial court found that at least one of the factors in R.C. 2929.14(C)(4), subsections (a), (b), or (c) applied. Specifically, the trial court stated:

Furthermore, I think the harm caused by this is so drastic. I mean, when you think about this young man, 21 years old, and just simply walking off the porch and going out and getting harassed by you and the other defendant, I think the sentence deserves consecutive terms. Tr. 747.

**{¶36}** After reviewing the sentencing transcript in its entirety, we conclude that the trial court fully engaged in the required analysis and fulfilled the statutory requirements of R.C. 2929.14(C)(4) to impose consecutive sentences. Accordingly, we overrule the second assigned error.

### Effective Assistance of Counsel

**{¶37}** In the third assigned error, Johnson argues he was denied the effective assistance of counsel.

**{¶38}** To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

**{¶39}** When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*. at 694.

**{¶40}** Within this assigned error, Johnson argues trial counsel was ineffective for failing to argue that the photo array was unreliable.

**{¶41}** A reviewing court applies a two-prong test in determining whether identification testimony was admissible. *State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921. Under the first prong, the defendant must show that the identification procedure was unduly suggestive. If we determine that it was, we then examine "whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character." *Id.* at ¶ 18.

**{¶42}** R.C. 2933.83 governs eyewitness identification procedures in lineups. Subsection (B)(1) of the statute provides in part that "[u]nless impracticable, a blind or blinded administrator shall conduct the live lineup or photo lineup." A blind administrator "means the administrator does not know the identity of the suspect." R.C. 2933.83(A)(2). "If a blind administrator is conducting the live lineup or the photo lineup, the administrator shall inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know who the suspect is." R.C. 2933.83(B)(5).

**{¶43}** In the instant case, Johnson argues that the photo array violates R.C. 2933.83 and broadly concludes that a "blind administrator" was not used to conduct the photo arrays because the arrays exist in a traditional "six-pack" form rather than the folder system addressed in R.C. 2933.83. However, Johnson's argument is misplaced.

**{¶44}** We have previously held that R.C. 2933.83 does not require the use of the "folder system" but, rather, the "folder system" is one system that can be used by law

enforcement for photo lineups. *State v. Quarterman*, 8th Dist. Cuyahoga No. 99317, 2013-Ohio-4037. *See also State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 77, citing *State v. Winters*, 6th Dist. Lucas No. L-12-1041, 2013-Ohio-2370, ¶ 42.

{¶45} At trial, Detective Bellanca testified that he served as the blind administrator in presenting photo arrays to Keith on two separate occasions. Detective Bellanca stated that both times he had no discussion with Keith, other than to read to him the instructions from the standard blind administrator form. By those instructions, Keith was advised, in part, that (1) the suspect may or may not be in the array, and (2) Detective Bellanca did not know who the suspect was.

{¶46} Detective Bellanca stated that on the first occasion, Keith identified Johnson's codefendant from a photo array. Detective Bellanca returned a week later with another photo array and Keith identified Johnson as the shooter. At trial Keith stated that (1) no one told him who to pick, (2) no one indicated if his pick was right, (3) he did not know whether anyone had been apprehended for the shooting, and (4) the police did not give him any information about the case after he made his identification.

{¶47} On this record, Johnson has failed to demonstrate that the identification procedure was unduly suggestive. Because Johnson has failed to demonstrate the first prong, we need not consider the second prong of whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. As such, Johnson has failed to demonstrate that counsel's performance was deficient.

**{¶48}** Within this assigned error, Johnson also argues that counsel was ineffective for failing to object to the prosecutor's statement that Johnson shot Keith in the stomach multiple times as he laid on his back. We find Johnson's assertion to be without merit. Keith specifically testified that Johnson shot him in the leg as he was running, causing him to fall, at which point, Johnson came over and shot him multiple times in the stomach.

**{¶49}** Based on Keith's testimony, the logical inference is that he was laying on his back at some point while Johnson was shooting him in the stomach. On this record, it would be pointless for counsel to object. Again, Johnson has failed to demonstrate that counsel's performance was deficient. Accordingly, we overrule the third assigned error.

### Manifest Weight of the Evidence

**{¶50}** In the fourth assigned error, Johnson argues his convictions were against the manifest weight of the evidence, because the victim's identification was unreliable.

**{¶51}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We

went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id*. at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶52} As discussed in the third assigned error, Johnson failed to demonstrate that the identification procedure was unduly suggestive. Keith identified Johnson as the shooter from the photo array and was sure of his identification. Keith also identified Johnson in court. Keith testified that he turned around and looked in Johnson's eyes when he felt the gun at the back of his head. Keith also testified that he was looking at Johnson while being shot multiple times in the stomach. Keith's identification of Johnson was sufficient to support the convictions. *See State v. Jordan*, 10th Dist. Franklin No. 04AP-827, 2005-Ohio-3790, ¶ 14. Even where discrepancies exist, eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness testimony to be credible. *State v. Bryson*, 8th Dist. Cuyahoga No. 98298, 2013-Ohio-934.

{¶53} This court is mindful that the weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. Chavez*, 8th Dist. Cuyahoga No. 99436, 2013-Ohio-4700, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraphs one and two of the syllabus.

**{¶54}** Further, because the factfinder has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375, citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709 (Aug. 22, 1997). Thus, the decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

**{¶55}** Thus, based on the foregoing, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions are against the manifest weight of the evidence. Accordingly, we overrule the fourth assigned error.

### Prosecutorial Misconduct

**{¶56}** In his fifth assigned error, Johnson argues that he was materially prejudiced by improper statements made by the prosecutor during closing arguments.

**{¶57}** When reviewing a claim of prosecutorial misconduct during closing arguments, we first determine whether the remarks were improper. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149. "[B]oth the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). But "[p]rosecutors must avoid insinuations and assertions calculated to mislead.

They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." *Lott* at 166.

{¶58} If we conclude that the remarks were improper, we next ask whether the remarks prejudicially affected the defendant's substantial rights such that the defendant's trial was unfair. *Powell* at ¶ 149. This requires us to examine the offending comments in the broader context of the entire case. *Id.* Our inquiry is guided by concern for "the fairness of the trial, not the culpability of the prosecutor." *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶59} Johnson first asserts that the prosecutor incorrectly stated that Detective Bellanca followed Cleveland Police Department protocol when presenting the photo arrays, despite Detective Bellanca's failure to use the "folder system." In our resolution of the third assigned error, we pointed out that R.C. 2933.83 does not require the use of the "folder system" but, rather, the "folder system" is one system that can be used by law enforcement for photo lineups.

{¶60} Further, we concluded that Johnson failed to demonstrate that the identification procedure, which utilized Detective Bellanca as a blind administrator, was unduly suggestive. As such, we find nothing improper about the prosecutor's statement that Detective Bellanca had followed the proper protocol.

{¶61} Next, Johnson asserts that the prosecutor alluded to matters that were not supported by evidence. Specifically, Johnson claims the following statement by the prosecutor was not supported by the evidence:

The victim in this matter never named any other individual as the shooter. He never named any other individual as his codefendant. It was always consistent that it was Junior, and E. He never provided any other suspect information. And I submit to you that the testimony of the victim was consistent. When he testified in this trial, he gave you a consistent version of events of what happened to him. And he never wavered from the fact that the individual who shot him, was the defendant in court. That was one thing he never wavered from. He maintained throughout his testimony that this is the guy who shot him. Tr. 641.

{¶62} However, the record indicates that above excerpt reflects what the evidence actually showed. At trial, Detective Harris, who arrived on the scene with Detective Todd after the shooting, testified that Keith was lying on the ground screaming that he had been shot. Detective Harris testified that he was unable to get any idea of the shooter, at that time, because the paramedics were busily trying to save Keith's life and that Keith eventually passed out.

{¶63} Detective Brooks testified that he spoke with Keith a month after the shooting, while Keith was still in the hospital. Detective Brooks said that Keith indicated that "E" shot him and that "Junior" was with "E." As previously discussed, Keith identified both Johnson and his codefendant Alexander, Jr., from the photo arrays. Further, at trial Keith testified that he knew Johnson as "E" and only learned his real name during the proceedings. Keith also testified that he has known the codefendants since he was 14 years old.

{¶64} Here, the above testimony mirrors the statement of the prosecuting attorney that Keith consistently identified Johnson as the shooter. As such, we find no merit in this assertion.

**{¶65}** Finally, Johnson argues the prosecutor's characterization of the shooting was flawed. Specifically, Johnson claims the prosecutor's assertion that Keith was shot multiple times in the abdomen as he laid on his back was improper. As previously discussed, Keith testified that he fell after being shot in the leg and then Johnson shot him multiple times in the stomach. Again, it is a permissible inference that at some point while being shot multiple times in his abdomen, Keith would have eventually fallen on his back, whether after the first or seventh bullet pierced his abdomen.

**{¶66}** After, reviewing the record, we see nothing in the complained of statements during oral argument that amounted to prosecutorial misconduct. Accordingly, we overrule the fifth assigned error.

### *Remmer* **Hearing**

**{¶67}** In the sixth assigned error, Johnson argues the court erred by failing to conduct a hearing pursuant to *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), when his grandmother indicated, after the verdict was rendered, that she knew one of the jurors.

**{¶68}** About two weeks after the verdict, defense counsel filed a motion for a *Remmer* hearing to determine juror bias. On March 11, 2013, the trial court held a hearing on the matter and stated in pertinent part as follows:

> * * * I was going to sentence you, but I delayed the sentencing. This is after a trial, and I think February 15th of this year. I was going to sentence you, and I delayed sentencing because there was an issue with — well, I was concerned as to a juror issue. Mr. Dixon, after — and I should really be clear on the record what that juror issue was. Your grandmother went and saw Juror No. 12 on this case and said to her, Hey, we went to school

together. And Juror No. 12 didn't remember, didn't know, and then apparently said, Yeah, we must have. And she notified the Court immediately after your grandmother went to her home. The juror called the Court, was upset by that kind of conduct. And then I had a sheriff's deputy and the prosecutor call and investigate what has occurred and what has happened and what was going on. Tr. 693-694.

**{¶69}** At the hearing, Johnson's grandmother testified that at some point during the trial she recognized Juror No. 12, but did not notify defense counsel or the the trial court until after the verdict had been rendered. Johnson's grandmother specifically testified that it was after the verdict was rendered that she went to Juror No. 12's home to remind her that they had attended grade school together.

**{¶70}** In *Remmer*, the United States Supreme Court stated:

In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in the pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Id*. at 229.

**{¶71}** Nonetheless,

due process does not require a new trial every time a juror has been placed in a potentially compromising situation. * * * Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* * * *.

*State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223 (8th Dist.), quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

**{¶72}** Pivotally, the contact with the juror occurred after the verdict had been rendered. There was no allegation that any private communication occurred with Johnson's grandmother and Juror No. 12 during the trial. In addition, as pointed out by the trial court, Juror No. 12 indicated that she did not immediately remember having gone to school with Johnson's grandmother.

**{¶73}** Under the circumstances of the instant case, the need for a *Remmer* hearing was not warranted. As such, the trial court did not err when it denied the motion for a *Remmer* hearing. Accordingly, we overrule the sixth assigned error.

**{¶74}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

PATRICIA ANN BLACKMON, JUDGE

MARY J. BOYLE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR