[Cite as *In re D.B.*, 2022-Ohio-936.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE D.B. | : | |
| | : | No. 110788 |
| | : | |
| | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 24, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-20110028

*Appearances:*

John H. Lawson, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah E. Hutnik, Assistant Prosecuting Attorney, *for appellee.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant D.B. appeals the trial court's decision to adjudicate him a delinquent of criminal damaging, pointing and discharging firearms, and other weapons, and asks this court to reverse D.B's adjudication and remand to the trial court. We affirm the trial court's decision.

{¶ 2} The trial court adjudicated D.B. delinquent of one count of criminal damaging, a second-degree misdemeanor, in violation of R.C. 2909.06(A)(1); and one count of pointing and discharging firearms and other weapons, a fourth-degree misdemeanor, in violation of Parma Municipal Code 672.14(A). The trial court found that D.B. was not delinquent on the menacing charge in violation of R.C. 2903.22(A). The trial court ordered that D.B. pay court costs of $256 and a fine of $100. D.B. was also ordered to write a letter of apology to the victims.

## I. Facts and Procedural History

{¶ 3} The facts reveal that on October 12, 2020, J.S. and M.H. were at the home of J.S. standing in the driveway. J.S. testified that around 4:30 pm., D.B. "passed on a dirt bike and shot the house." (Tr. 8.) D.B. then continued to ride away. J.S. also testified that after D.B. rode by on the dirt bike, he saw D.B.'s brother and another passenger in a car following D.B. (Tr. 9.) J.S. stated that he clearly saw D.B. on the dirt bike because D.B. did not have a helmet on or anything obstructing his face. (Tr. 10.) J.S. testified that as D.B. rode by, he shot at the house with a BB gun. *Id.* J.S. stated that he heard a ping and next to where he heard the ping, there was a hole. (Tr. 10-11.) J.S. called his sister, who called the police when she arrived home. (Tr. 11.)

{¶ 4} On cross-examination J.S. testified that he previously owned a BB gun but on the date of this incident his father took it away from him. (Tr. 13.) J.S. also testified that he did not see D.B. shoot a BB gun at the house, but instead just heard the ping. (Tr. 15.) He stated that he heard the ping and then ran into the

house, but did not actually see D.B. shoot the gun, but did see D.B. riding past on a dirt bike. (Tr. 16.) J.S. also testified that he told the police that he did not see anybody shoot the BB gun, but that he just heard the shot. (Tr. 18-19.) On redirect examination, J.S. testified that as D.B. passed by, he waved and then J.S. heard the shot. (Tr. 19.). J.S. testified that D.B. had the BB gun in his left hand as he rode by and crossed his body to shoot. (Tr. 22.)

{¶ 5} M.H., who was at J.S.'s house on the day of shooting, testified that he saw D.B. on a motorcycle and that D.B. shot the BB gun. (Tr. 26.) M.H. also testified that he saw a hole in the garage after the shooting. (Tr. 27.) On cross-examination, M.H. testified that earlier in the day, he and J.S. went to McDonald's. He left McDonald's, going to J.S.'s house, in a car with a group, including D.B. and D.B.'s brother. During this time, another friend of the group was riding the same dirt bike that J.S. testified to seeing D.B. ride by the house.

{¶ 6} M.H. testified that he also took a turn riding the dirt bike. (Tr. 32.) However, M.H. stated that when the shots were fired, D.B. was riding the bike. (Tr. 33.) M.H. also testified that after the shooting, he went to hang out with D.B. so that D.B. could take him back to get his dirt bike from another location. (Tr. 34.)

{¶ 7} D.B.'s defense counsel pointed out that M.H.'s story did not make sense, because the timeline was different from what he testified to earlier and was different from J.S.'s testimony. M.H. stated that he did not remember because it happened a long time ago. (Tr. 35.) On redirect, M.H. testified that he saw D.B.

after the shooting and asked D.B. to take him to get his dirt bike because he did not want it to get stolen. (Tr. 37.)

**{¶ 8}** At the conclusion of the testimony, D.B.'s counsel made a Crim.R. 29 motion arguing that the state had not meet its burden of proof as a result of the inconsistent testimony from the witnesses. (Tr. 43.) D.B.'s counsel asked the trial court to dismiss the case against D.B. The trial court denied defense counsel's request for dismissal.

**{¶ 9}** The trial court found D.B. delinquent of two of the three counts charged in the indictment, and assessed court costs and a fine against D.B. D.B. was released to his parents and filed this appeal assigning one error for our review:

> The trial court erred by relying on the state's two witnesses to adjudge D.B. delinquent as both witnesses' testimony was so unreliable and significantly inconsistent that the manifest weight of the evidence was not proven beyond a reasonable doubt.

## II. Manifest Weight of the Evidence

### A. Standard of Review

**{¶ 10}** "'In determining whether a juvenile court's adjudication of delinquency is against the manifest weight of the evidence, the applicable standard of review is the same standard applied in adult criminal convictions.'" (Internal citations omitted.) *In re A.T.*, 8th Dist. Cuyahoga No. 110123, 2021-Ohio-2934, ¶ 72, quoting *In re A.W.*, 8th Dist. Cuyahoga No. 103269, 2016-Ohio-7297, ¶ 43.

**{¶ 11}** "A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion." *State v.*

*Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 35, citing *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. "Weight of the evidence 'addresses the evidence's effect of inducing belief,' i.e., 'whose evidence is more persuasive — the state's or the defendant's?'" *Id.*, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

{¶ 12} "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a 'thirteenth juror' and may disagree 'with the factfinder's resolution of * * * conflicting testimony.'" *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1977).

{¶ 13} In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder and not a jury:

> "Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*In re C.B.*, 8th Dist. Cuyahoga No. 109095, 2020-Ohio-4749, ¶ 5, quoting *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.).

**{¶ 14}** Additionally,

> "[w]e recognize that '[w]here a trial is not to a jury, a majority of the Court of Appeals may reverse a judgment on the weight of the evidence.'" *State v. Gilkerson*, 1 Ohio St.2d 103, 104, 205 N.E.2d 13 (1965), citing *Hnizdil v. White Motor Co.*, 152 Ohio St. 1, 87 N.E.2d 94 (1949), and construing former Section 6, Article IV, of the Ohio Constitution, which is similar to the current version of Section 3(B)(3), Article IV.

*Id.* at ¶ 6, quoting *In re D.L.*, 2016-Ohio-5834, 70 N.E.3d 1201, ¶ 17 (8th Dist.).

## B. Law and Analysis

**{¶ 15}** In D.B.'s sole assignment of error, he argues that the trial court erred in relying on J.S.'s and M.H.'s testimony as they were inconsistent. "[A] defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness' testimony are inconsistent or contradictory." *Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, at ¶ 40. D.B. points to the fact that J.S. and M.H. both testified that they did not see D.B. shoot the BB gun. M.H. also testified that there were certain events from that day that he did not remember. Both witnesses testified that J.S. owned a BB gun until the J.S.'s father took the gun away after this incident.

**{¶ 16}** Additionally, M.H. testified that he and two different people rode the dirt bike that day. M.H. also testified that he went to D.B.'s house after the shooting to ask D.B. to take him to get his bike from another location. D.B. argues that the testimonies are inconsistent and unreliable because both witnesses first claimed to

have seen D.B. shoot the BB gun and then changed their testimony stating that they did not see him.

{¶ 17} However, "this court remains mindful that the credibility of the witnesses is primarily for the trier of fact to assess." *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 62, citing *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14. "The trier of fact is in the best position to make credibility determinations because this court cannot view the demeanor of a witness while testifying. Therefore, the trier of fact is in the best position to determine if the proffered testimony is credible." *Id.*, citing *State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42.

{¶ 18} "The decision whether, and to what extent, to believe the testimony of a particular witness is 'within the peculiar competence of the factfinder, who has seen and heard the witness.'" *Id.* at ¶ 72, citing *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54. D.B. argues that J.S.'s and M.H.'s testimony was inconsistent. However, "'[i]n reviewing the manifest weight of the evidence, * * * even where discrepancies exist, eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable [factfinder] could find the eyewitness testimony to be credible.'" *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 37, citing *State v. Taylor*, 10th Dist. Franklin No. 12AP-870, 2013-Ohio-3699, ¶ 47. J.S. initially testified that he saw D.B. shoot the BB gun; however, under cross-examination, he stated that he did not see D.B. shoot the gun, but rather

saw D.B. riding past the house with the BB gun in his left hand. J.S. then heard a ping from the shot.

{¶ 19} M.H. also testified that he recognized D.B. riding the bike because he did not have on a helmet. However, after D.B.'s counsel stated to him that M.H.'s timeline did not make sense, M.H. claimed it was difficult to remember given the incident happened a long time ago. Because of this, D.B.'s counsel stated that the testimony from J.S. and M.H. were different from what they told the police. However, "* * * inconsistencies among the witnesses' testimony or purported discrepancies between the witnesses' statements to police and their trial testimony are not a sufficient basis to overturn [D.B.'s adjudication] on manifest weight grounds." *Id.* at ¶ 35. "The trial court, as the trier of fact in this case, was in the best position to weigh the evidence and the witnesses' credibility. It was entitled to believe or disbelieve all, part, or none of a witness's testimony." *Id.* at ¶ 40, citing *State v. Torres*, 8th Dist. Cuyahoga No. 99596, 2013-Ohio-5030, ¶ 93.

{¶ 20} After examining the entire record, we cannot say that the trial court lost its way or created a manifest miscarriage of justice in adjudicating D.B. delinquent. Two witnesses testified that they saw D.B. on the dirt bike riding past the house where they heard a ping from a BB gun. Both juveniles recognized D.B. because he did not have his face covered, and they had been friends in the past. J.S. saw the B.B. gun in D.B.'s left hand while D.B. drove by on the dirt bike and J.S heard the ping. M.H. was just with D.B. riding the dirt bikes but D.B. was riding by during

the time of the incident with his brother following in a separate vehicle when he heard the ping.

**{¶ 21}** Therefore, D.B.'s assignment of error is overruled.

**{¶ 22}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. The defendant's adjudications having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of commitment.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EMMANUELLA D. GROVES, J., CONCUR